STATE *ex rel.* HAROLD H. CASHMAN

*v.*

EDGAR B. SIMS, *Auditor of the State of West Virginia*

(No. 9952)

Submitted June 10, 1947.   Decided July 11, 1947.

*Ralph L. Miller,* for relator.

*Ira J. Partlow,* Attorney General, *Eston B. Stephenson* and *W. Bryan Spillers,* Assistant Attorneys General, for respondent.

HAYMOND, JUDGE:

In this original proceeding in mandamus the petitioner, Harold H. Cashman, seeks a writ from this Court to compel the defendant, the Honorable Edgar B. Sims, Auditor of West Virginia, to issue a warrant in due form upon the State Treasurer for the payment of an award made by the State Court of Claims on November 18, 1946, in favor of the petitioner, for $2,000.00. The award was based upon his claim for compensation for disability resulting from tuberculosis alleged to have been contracted by him during his employment by the West Virginia Board of Control during the year 1944 as a member of the medical staff at Hopemont Sanitarium, an institution for the treatment of tubercular patients, maintained by the State of West Virginia near Terra Alta, in Preston County, West Virginia.

At its regular session of 1947, by Senate Bill No. 266, passed March 8, 1947, effective from passage, and approved by the Governor, the Legislature of West Virginia, in considering a number of claims by various persons

against the State and some of its agencies, including the claim of the petitioner, adopted as its own the findings of fact of the State Court of Claims as to his claim, declared it to be the moral obligation of the State to pay the claim, and directed the auditor to issue a warrant for its payment from available funds appropriated for that purpose. Chapter 24, Acts of the Legislature of West Virginia, 1947, Regular Session. The Legislature also made an appropriation sufficient to pay the award. Chapter 27, Acts of the Legislature of West Virginia, 1947, Regular Session. Following the action of the Legislature, the West Virginia Board of Control issued a requisition upon the auditor to issue a warrant for the payment of the claim and the petitioner also made demand that he pay it. By written communication to the West Virginia Board of Control, dated May 2, 1947, the auditor declined to pay the claim for the assigned reason that its payment would constitute an unauthorized gift of state funds to the claimant.

After this action of the auditor, the claimant instituted this proceeding and filed his petition for a writ of mandamus in this Court on May 20, 1947. On the day to which the rule issued upon the petition was made returnable, the defendant appeared and filed his written demurrer to the petition. On June 10, 1947, the issues arising upon the petition and the demurrer were submitted for decision upon oral argument and briefs filed in behalf of the respective parties.

The facts, which appear from the petition and by stipulations of the parties, are not in dispute. The stipulations contain the opinions of the State Court of Claims and final orders of the State Compensation Commissioner and of the Workmen's Compensation Appeal Board. These orders denied the claim filed by the petitioner for compensation in a prior proceeding before the State Compensation Commissioner.

The petitioner, a resident of this State, is a duly licensed physician. In January, 1944, he accepted employment by the West Virginia Board of Control as a member of the

medical staff at Hopemont Sanitarium, a state institution located near Terra Alta in Preston County, West Virginia. As an incident of his employment he was required, by a rule of the American Medical Association, to remain in that position for a period of at least one year. Under the rule termination of his employment before the expiration of the minimum period would operate to bar him from rendering professional medical services afterwards at any other similar institution. He was, however, aware of the existence and the operation of the rule when he entered the institution in January, 1944. When serving at Hopemont Sanitarium he was stricken with pulmonary tuberculosis in October, 1944, before the expiration of one year from the commencement of his employment. He was disabled and made bedfast by the disease. The exact length of the period of his disability is not disclosed. It lasted for a considerable time, however, as he was confined to bed and unable to attend the hearings held by the State Court of Claims in 1946, and in the opinion of one medical witness, the doctor in charge of the sanitarium, the probable duration of his disability was from two to two and one-half years from the inception of the disease.

When he accepted employment at Hopemont Sanitarium he was in good health and he contends that the performance of his duties as a physician at the sanitarium brought on his illness. He was required to attend eighty tubercular patients, and in this work he was assisted by only three nurses. More nurses were available but the services of any additional number were not obtained because the wages paid to nurses at Hopemont Sanitarium were lower than those paid for similar services at like institutions in other States. There were not enough doctors on the staff of the institution or a sufficient number of nurses in attendance for the proper supervision of the treatment, and for the care, of eighty patients. Due to the dangerous and infectious nature of tuberculosis, which can be communicated from an infected patient to doctors, nurses, and others present, by the transfer of its germs through the air from the one to the others, recognized cur-

rent medical standards required a larger staff of doctors and not less than thirty-two nurses to care for eighty patients.

According to a survey of experts the annual minimum sum of $270,000.00 in salaries was necessary to care for the needs of the institution, but the sum available for that purpose for one year was only $192,000.00. Due to inadequacy of funds the required number of nurses was not provided during the period of the employment of the petitioner. A report which dealt in detail with the conditions at Hopemont Sanitarium, based upon inspection and examination, was made by a qualified nurse experienced in the supervision of institutions of that character. Her conclusion, stated in the report, was that the medical care was excellent, the clinical material was abundant, and the physical plant was adequate, but that the nursing department, though possessed of excellent leadership, was too limited to meet the needs of the large number of patients.

The claim was twice considered by the State Court of Claims. Upon the first hearing which, because of his illness, the petitioner was unable to attend to testify in his own behalf, and at which only a few of the facts detailed above were established, the claim was denied in April, 1946. Later in 1946 a rehearing was had. Upon the rehearing the foregoing facts were presented and the petitioner, though still unable to attend in person, submitted his testimony in the form of a deposition. The State Court of Claims reversed its order rendered upon the first hearing and held, by a vote of two to one, that the State of West Virginia had failed to discharge its duty to the claimant to provide him a safe and sanitary place of employment and was morally bound to compensate him for his loss of services and the suffering endured by him as a result of the disease which he contracted during the period of his employment. The minority member of the Court of Claims filed a dissenting opinion. In it he adhered to the conclusion reached by the court, in rejecting the claim on the first hearing, that the claimant had assumed the

risks incident to his employment, and advanced, as an additional reason for denying compensation, the view that there was no statutory authority which justified an award for loss or injury caused by tuberculosis.

In 1945, before seeking relief from the State Court of Claims, the petitioner filed with the State Compensation Commissioner his claim for compensation under the Workmen's Compensation Law of this State. The claim was denied by the commissioner on July 3, 1945, on the ground that the disability of the claimant, caused by tuberculosis, was not due to an injury received in the course of and resulting from his employment. Upon appeal to the Workmen's Compensation Appeal Board, the order of the State Compensation Commissioner denying the claim was affirmed on October 6, 1945.

Upon the petition and the demurrer, which assigns numerous grounds, two vital questions arise. These questions are: (1) Whether the claim of the petitioner, a private person, is a claim which the Legislature of West Virginia can lawfully recognize as a moral obligation against the State; and (2) whether, upon the established facts, public funds may be used to pay a claim of a private person for compensation for loss and disability which the Legislature has declared to be a moral obligation against the State and for the payment of which it has made an appropriation.

The declaration of the Legislature that the claim of the petitioner constitutes a moral obligation of the State is challenged by the defendant on two principal grounds.

The first ground of attack is that the Legislature, having made no independent finding of the facts, was not justified in adopting as its own the conclusion of the State Court of Claims upon the facts as ascertained by it and as recited in its opinions. It is argued that the Legislature may not adopt the finding of the State Court of Claims as to the facts before it, but that the Legislature, upon its own initiative, and acting as an entirety, or through a

properly constituted committee, must itself examine and determine the facts upon which its declaration rests. This contention is without merit. The Legislature is vested with the inherent power to conduct investigations in aid of legislative action and for the purpose of obtaining information necessary to enable it to discharge its functions and exercise its powers of legislation. It may exercise this power either directly or indirectly. See 49 Am. Jur., States, Territories and Dependencies, Section 29. It may do so by means of any of its duly constituted and authorized instrumentalities. The State Court of Claims is the creature of the Legislature of this State. It is not a judicial body. It is a special instrumentality of the Legislature. Its powers and its functions are not judicial but legislative in character. Section 4, Chapter 20, Acts of the Legislature, 1941, Regular Session. The Legislature may accept or reject its findings or approve or disapprove its recommendations. *Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585. Subject to the limitations imposed by the Constitution of this State and the Constitution of the United States, the Legislature may adopt any means which it deems appropriate to determine the facts within its constitutional sphere of legislative action. The action of the Legislature in adopting the facts as determined by the State Court of Claims does not offend any constitutional limitation upon its power in that respect. It could have acted directly as a unit, or indirectly by a committee or other authorized instrumentality. The Legislature elected to ascertain the facts with relation to the claim of the petitioner by utilizing the information made available to it by the State Court of Claims, a special instrumentality created by it for the purpose of considering certain claims against the State and recommending to it their disposition. It has conferred upon that instrumentality fact finding powers, and its action in adopting its findings may not, because of the means employed, be ignored or disregarded by the courts.

The second ground of challenge to the validity of the legislative declaration that payment of the claim of the

petitioner is a moral obligation of the State is that the facts as determined by the State Court of Claims, adopted by the Legislature, are not sufficient to support a valid declaration of that nature. This objection renders it necessary for this Court to ascertain whether the facts presented establish such an obligation.

Unless a moral obligation of the State affirmatively appears and has been found by the Legislature to exist, an appropriation of public money for private use is beyond the legitimate scope of legislative power and, for that reason, is invalid. *Adkins* v. *Sims*, 127 W. Va. 786, 34 S. E. 2d 585. A declaration by the Legislature of a fact, which has been made the basis of a legislative enactment, is not subsequently a matter for judicial determination. *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278. A legislative declaration of fact, if not arbitrary, will be considered as final. *Lemon* v. *Rumsey*, 108 W. Va. 242, 150 S. E. 725. In *Glover* v. *Sims*, 121 W. Va. 407, 3 S. E. 2d 612, the statement is that a legislative declaration of fact should be accepted by the courts unless strong reason exists for rejecting it. See also *Wilson* v. *The County Court of Clay County*, 114 W. Va. 603, 175 S. E. 224. These expressions are in accord with the well recognized principle that the judiciary has no part in the policies of government, and is not concerned with the wisdom or the expediency of legislation. *Hallanan* v. *Hager*, 102 W. Va. 689, 136 S. E. 263; *Slack* v. *Jacob*, 8 W. Va. 612. A court may not question the wisdom or the governmental policy of a legislative enactment, as those matters belong exclusively within the legislative department of government. See *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278. Within its legislative sphere, and subject only to constitutional limitations, the power of the Legislature is almost plenary and it may pass whatever legislation it may see fit to enact. *State Road Commission* v. *Kanawha County Court*, 112 W. Va. 98, 163 S. E. 815; *State* v. *City of Charleston*, 92 W. Va. 61, 114 S. E. 382; *George* v. *Board of Ballot Commissioners*, 79 W. Va. 213,

90 S. E. 550. See also 49 Am. Jur., States, Territories and Dependencies, Section 36. When, however, the declaration of the Legislature is based on facts which give rise to an existing juristic condition, the declaration is not conclusive. The matter here involved, being in its nature primarily juristic, the finding of the Legislature upon the facts disclosed by the opinions of the members of the State Court of Claims is subject to judicial inquiry and consideration. *Berry v. Fox,* 114 W. Va. 513, 172 S. E. 896. The facts in this case, upon which the legislative declaration of a moral obligation rests as distinguished from a declaration of fact which denotes a governmental policy and affords a basis for legislation, give rise to a juristic condition which calls for judicial determination. Here the legislative declaration is not merely factual but is juristic in its nature. The courts must decide whether a condition of that character, which arises from particular facts, creates a moral obligation against the State. The decision of that question involves the judicial process, and is a judicial, not a legislative, function. See *Woodall v. Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278. The distinction between the two types of legislative declarations of fact, though it may be difficult to recognize and apply in some instances, is nevertheless valid and subsisting and sound in principle. See *Berry v. Fox,* 114 W. Va. 513, 172 S. E. 896.

Though claims against the State which were approved by the Legislature for payment and as to which appropriations of public funds for that purpose were made by it have been considered by this Court in several cases, the requisites of a moral obligation of the State with respect to the claim of a private person have not been clearly stated or established in this jurisdiction. A moral obligation has been defined as "A duty which is valid and binding in conscience and according to natural justice, but is not recognized by the law as adequate to set in motion the machinery of justice; that is, one which rests upon ethical considerations alone, and is not imposed or enforced by positive law"; and as "A duty which would be enforceable

by law, were it not for some positive rule, which, with a view to general benefit, exempts the party in that particular instance from legal liability." Black's Law Dictionary, Third Edition, page 1274. These definitions, however, are not particularly helpful, and the essentials of a moral obligation in any particular case must be determined from the applicable principles stated in, and deducible from, the prior decisions of this Court.

The case of *Slack v. Jacob*, 8 W. Va. 612, involved the constitutionality of an act of the Legislature which provided for the transfer of the seat of government of this State from Charleston and its temporary location at Wheeling. The act recited a prior agreement by several citizens of Wheeling with the State to furnish it, without cost, suitable accommodations for certain designated departments if the seat of government should be temporarily removed to Wheeling. It authorized and directed the Governor to perform certain specified duties which required the expenditure of money, but it contained no appropriation for that purpose and it vested no power in him to enter into any contract in behalf of the State to enable him to carry out its provisions. This Court upheld the act as constitutional. In considering whether the act conferred upon the Governor power to enter into contracts for the purpose of discharging the duties imposed by the act and whether such contracts were prohibited by Section 38, Article VI of the Constitution, the Court uses this language: "But whether it does authorize such contract, or not, it is not uncommon for persons to supply the needs of government or its different departments without contracts, relying on the voluntary justice of the State to pay reasonably therefor. And such transactions have been regarded as not within the true meaning of the said thirty-eighth section, and such voluntary payments have been made with the approval of all departments of the government. According to our understanding, that part of the said thirty-eighth section only applies to claims based on agreements or contracts made without express authority of law, and the section declares such unauthorized agree-

440

ments null and void. It does not apply to claims predicated upon simple justice and right, and never was intended to prevent the Legislature from voluntarily doing justice and right where the claim is not predicated on a contract made without express authority of law." It is reasonably clear that the Court, in using this language, had in mind a situation in which the State would receive a benefit of a public nature from private persons under a contract made by the State but not expressly authorized by any statute in existence prior to the passage of the act removing the seat of government from Charleston to Wheeling, and that the contract was such that, as between private persons and in the absence of the constitutional immunity of the State from suit, would be recognized as valid and enforceable. In those circumstances a moral obligation, which the Court would have recognized as such, would exist against the State.

In *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278, the claimant, a member of the national guard of this State, was injured while on duty in rendering military service. By virtue of a statute enacted before he entered the military service which made provision to compensate any member of the national guard who, without his fault, should be wounded or disabled in the performance of any lawfully ordered duty, and because the legislation which made such provision for those who enter the military service of the State was regarded as being in the interest of the public welfare, the claim was recognized by this Court as a moral obligation against the State. The Court regarded the statute as an inducement to the claimant in that case to enlist in the military service of the State, and expressed the view that he had a right to expect that, if injured while performing his duty, he would be compensated from the public treasury and that, as he had entered the military service and had received his injury after the enactment of the statute, a moral duty rested upon the State to make provision for him. In the opinion, however, the Court uses this language: "But when the act authorized

the raising of a fund by taxation to pay bounties to soldiers who had previously volunteered, or to repay money to persons who had hired substitutes, they were held by the courts to be unconstitutional, on the ground that they amounted to an appropriation of public funds to a purpose that was purely private; and that the legislature was without power to make private donations out of the public funds. *Freeland* v. *Hastings,* 10 Allen (Mass.) 570; *Perkins* v. *Inhabitants of Milford,* 59 Me. 315; *Kelly* v. *Marshall,* 69 Pa. St. 319; *Bush* v. *Board of Supervisors,* 159 N. Y. 212; *Mead* v. *Town of Acton,* 139 Mass. 341, 1 N. E. 413."

In *Glover* v. *Sims,* 121 W. Va. 407, 3 S. E. 2d 612, a proceeding in mandamus, the claim of the relator for commodities and services furnished by him for use in connection with the athletic activities of the West Virginia University was recognized as a moral obligation of the State.

In *Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585, also a proceeding in mandamus, the claim of the relator, based on an award of the State Court of Claims, was for damages for the death of his decedent in a automobile accident upon a state highway alleged to have been caused by the failure of the State Road Commission to install and maintain guard rails, road markers and a center line in order to render the road reasonably safe for use by the public. No declaration by the Legislature of the existence of a moral obligation upon the State to pay the claim was established and for that reason the refusal of the auditor to issue a warrant for that purpose was not disturbed by this Court. In the concurring opinion delivered by two judges of this Court the view was expressed that no negligence of the State Road Commission was established upon which to predicate a moral obligation against the State for the payment of which the Legislature could make a valid appropriation of public funds.

From the holdings in the above cited cases it is evident that a moral obligation exists in favor of a private person for which the Legislature may make a valid appropriation of public funds for its payment when the public is interested in the appropriation and, save for the constitutional

immunity of the State from suit, a contractual obligation, not created or authorized by prior statute, incurred by the State, is such that, in cases between private persons, it would be recognized and considered as valid and binding, either at law or in equity; or a right to compensation is created in favor of a claimant by a previously enacted statute, and injury or damage results to him without fault upon his part while he is engaged in the discharge of a lawfully imposed duty. This appears to be the extent to which this Court has gone, in the decided cases that have come before it, in recognizing the existence of a moral obligation upon the part of the State, although it is stated in the opinion in *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278, that the Legislature, in making appropriations of public moneys, is not strictly limited to that which, in cases between private persons, would be considered a legal obligation, "but it may recognize moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law required to do so or not."

The sound and just general rule by which a moral obligation of the State in favor of a private person may be recognized, and for the payment of which a valid appropriation of public funds in the interest of the public may be made by the Legislature, requires the existence of at least one of these components in any particular instance: (1) An obligation or a duty, by prior statute created or imposed upon the State, to compensate a person for injury or damage resulting to him from its violation by the State or any of its agencies, or to compensate him for injury, damage, or loss sustained by him in or by his performance of any act required or authorized by such statute; or (2) an obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons.

Other situations may arise in which a moral obligation may properly be found to exist against the State, involving a condition which would give rise to an obligation

predicated upon simple right and justice such as a fair and just man should assume in his own affairs even though not compelled by law to do so, as indicated by the statements already referred to in the opinions of this Court in the *Slack* and *Woodall* cases. Such situations, however, in which a moral obligation of the State might properly be recognized, should be considered as an exception to the general rule just stated; and in each instance the determination of that question depends upon the facts and the circumstances of each particular case.

Applying the general rule heretofore stated to the facts upon which the claim of the petitioner is based, as disclosed by the opinions of the members of the State Court of Claims, it is manifest that no moral obligation is established against the State upon which a valid appropriation could be made by the Legislature for its payment. Furthermore, the facts do not bring the claim within any properly recognizable exception to the rule which could support a moral obligation predicated on simple right and justice or based upon purely moral or equitable considerations which a just man would be likely to recognize in his own affairs when not required by law to do so.

The findings of the State Court of Claims show no conduct by the State which, if engaged in by a private person, would constitute negligence by such person in the operation of the sanitarium at Hopemont during the period the claimant was employed as a member of its medical staff. The conditions which resulted from the shortage of nurses and doctors are asserted by the claimant as the proximate and responsible cause of his illness and his resulting disability. This shortage occurred during the recent world war when competent personnel in adequate numbers was not available for such institutions generally and in most sections of the nation. This situation was known to him as well as to the general public at the time. The comparatively low range of salaries which tended to prevent any increase in the number of nurses and doctors who might otherwise have been available, was due to the limited amount of funds which the Legislature appropriated as

sufficient for the needs of the institution. Perhaps that condition was unsatisfactory. The existence of that condition, and the operation of the institution within its lawfully available revenue, did not, however, violate any obligation or duty, legal or moral, upon the part of the State to the claimant. It owed him no such duty, and its acts and omissions in that respect, had they been those of a private person, could not be regarded as negligent. The facts indicate that except for the insufficient number of nurses, the general conditions of the sanitarium were adequate for the accomplishment of the purposes for which it was instituted and maintained.

The liability of a State in the conduct of its ordinary affairs is in many respects different from that of a private person. Ordinarily it can incur liability only by means of a contractual obligation. A State is not liable for the tortious acts of its officers, agents or employees unless such liability is assumed by or imposed upon it by valid statute. 49 Am. Jur., States, Territories and Dependencies, Sections 73 and 76. See *Hayes* v. *The Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702; *Downs* v. *Lazzelle,* 102 W. Va. 663, 136 S. E. 195; *Brown* v. *Guyandotte,* 34 W. Va. 299, 12 S. E. 707, 11 L. R. A. 121. Even though an obligation or a liability may exist against the State of West Virginia, the Constitution of this State provides that it shall never be made a defendant in any court of law or equity except as garnishee or suggestee in any garnishment or attachment proceeding. Section 35, Article VI, Constitution of West Virginia. The immunity of the State from suit is absolute except as to garnishment or attachment proceedings. *Hayes* v. *The Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702; *Stewart* v. *State Road Commissioner,* 117 W. Va. 352, 185 S. E. 567.

Tuberculosis is not an occupational disease. *Bolosino* v. *Laclede-Christy Clay Products Co.* (St. Louis Court of Appeals, Missouri), 124 S. W. 2d 581. See *Hobday* v. *Compensation Commissioner,* 126 W. Va. 99, 27 S. E. 2d 608. It is infectious and it is caused by a germ known as tubercle bacillus breathed into the lungs or introduced into the

human body with food. Most human beings, without regard to vocation or occupation, are subject to infection by its germ. Medical authorities distinguish between the infection and the disease. The disease does not appear in an infected person whose condition of health and systemic resistance are sufficient to overcome the infection. Tuberculosis has been characterized as the most common and the most fatal of all diseases. Surveys conducted by experts between 1909 and 1914 indicate that in densely populated industrial centers most persons who have reached the age of fifteen years and who are living under urban conditions are infected with the tubercular germ.

When and how claimant contracted the disease are not definitely shown. Perhaps they could not be positively ascertained. The exact cause of his infection is largely a matter of speculation. Were it not for a physical examination made a short time before he began his employment at Hopemont Sanitarium, which indicated the then absence of the disease, the hazard which his physical presence at any such institution presented, and the appearance of the disease while he was engaged in his work, all of which strongly indicate that he contracted the malady while at the sanitarium, it could be reasonably inferred that he acquired it at some other place or from someone other than the patients at Hopemont Sanitarium, or that it resulted from the earlier presence of the germ in his system in latent or inactive form which eventually produced the disease after he entered the institution. The finding of the State Compensation Commissioner, affirmed by the Workmen's Compensation Appeal Board, is to the effect that the disability of the claimant was not due to an injury received in or resulting from the course of his employment. No established fact shows, or tends to indicate, that the small number of nurses on duty at the sanitarium caused him to contract the disease, or that any larger number of nurses or the expansion of the equipment or the facilities of the institution would have removed or overcome the constant hazard which the presence of tuberculosis patients created and produced.

The claimant was fully aware of the situation at the sanitarium and the practical conditions with which he was confronted during the entire period of his employment. By reason of his training and his experience as a medical practitioner, he was especially qualified to comprehend fully the hazard which attended his work. In these circumstances he assumed the ordinary risks incident to the employment. By the Workmen's Compensation Law of this State, an employer subject to the statute who complies with its provisions and contributes to the fund, is relieved from liability for damages at common law or by statute for injury or death of an employee, Section 6, Article 2, Chapter 23, Code of West Virginia, 1931; but if he does not elect to contribute, or makes default in his contribution payments, he is deprived of certain common law defenses, including the defense of assumption of risk, in any action by an employee or his personal representative for damages for accidental injury to, or death of, an employee caused by wrongful act, neglect or default of the employer or his officers, agents or employees, Section 8, Article 2, Chapter 23, Code of West Virginia, 1931.

Though the State of West Virginia, as an employer, is subject to the Workmen's Compensation Law, the provisions of that statute do not recognize or make compensable the disease contracted by the claimant, or his disability resulting from it. To be compensable under that statute, a disease must be attributable to a specific and definite event arising in the course of and resulting from the employment. See *Montgomery* v. *State Compensation Commissioner,* 116 W. Va. 44, 178 S. E. 425. Other than silicosis, which since 1935, by an amendment to the Workmen's Compensation Law, has been compensable, a disease which is contracted by an employee through an indefinite period of employment is not compensable under that statute. *Jones* v. *Rinehart & Dennis Co., Inc., et al.,* 113 W. Va. 414, 168 S. E. 482. For that reason, the claim of the petitioner was properly denied by the State Compensation Commissioner.

No statute of this State making provision for any award

of compensation to an employee of a state tuberculosis institution existed at or prior to the time of the employment of the petitioner at Hopemont Sanitarium. The present statute, providing free treatment and limited compensation for an employee of the State who proves to the satisfaction of the West Virginia Board of Control that he contracted tuberculosis in the course of and as a result of his employment at any such institution, enacted by the Legislature February 10, 1947, approved by the Governor and effective ninety days from passage, does not apply to the claim of the petitioner.

The unwillingness of the Legislature to enact this statute sooner, and its delay in that respect until its recent regular session of 1947, indicate that it was not the previous public policy of this State to make provision for those now happily benefited by the recent act. It is therefore necessary to appraise and consider the claim of the petitioner on the basis of the common law principles of negligence and assumption of risk as they apply to private persons. The common law doctrine of assumption of risk, except as it is altered or its application is removed by any particular statute, affects the relation of master and servant in this jurisdiction. That doctrine, when applied to that relation, is that a servant who enters the employment of a master assumes all the ordinary risks incident to the employment whether the character of the employment be dangerous or not dangerous. *Davis* v. *Nuttallburg Coal & Coke Co.,* 34 W. Va. 500, 12 S. E. 539; *Knight* v. *Cooper,* 36 W. Va. 232, 14 S. E. 999; *Woodell* v. *West Virginia Improvement Company,* 38 W. Va. 23, 17 S. E. 386. See *Connell* v. *Fisher Body Corporation,* 56 Ga. App. 203, 192 S. E. 484. In *Skidmore* v. *West Virginia & P. R. Co.,* 41 W. Va. 293, 23 S. E. 713, this Court, discussing the status of an employee, says in Point 4 of the syllabus:

"When one enters upon a service, he assumes to understand it, and takes all the ordinary risks that are incident to the employment; and where the employment presents special features of danger, such as are plain and obvious, he also assumes the risk of those."

The requirement of the American Medical Association that the claimant continue his employment for a minimum period of at least one year does not alter the situation. Properly considered, it did not compel him to continue his services under conditions which were dangerous to his health. With full knowledge of the obvious risks which attended his work he voluntarily elected to continue his employment. For this he is to be commended and admired. By so doing he rendered, at a risk which became a reality, a noble service to afflicted humanity. His service evokes sympathy and admiration but, unfortunately, it does not entitle him to compensation from the public funds of the State.

As no conduct by the State is established which if engaged in by a private person would amount to negligence, and as the claimant voluntarily and knowingly assumed the obvious risks of his employment, it is manifest that if he had been employed by a private employer instead of by the State, he could not maintain his claim against his employer because of the absence of any legal liability for his injury. It is obvious, also, that if the petitioner, as a practicing physician, had contracted the disabling disease of tuberculosis, or any other disease, as a result of his care and treatment of private patients, he could not subject any of them to liability for his injury or disability. Under the rule heretofore stated, or any properly recognizable exception to it, the declaration by the Legislature of the existence of a moral obligation of the State in favor of the claimant was beyond the legitimate scope of its constitutional legislative powers. For that reason the declaration can not be sustained or recognized as valid.

The declaration by the Legislature of the existence of a moral obligation of the State being invalid in this instance, the appropriation of the sum of $2,000.00 contained in Chapter 27, Acts of the Legislature of West Virginia, 1947, Regular Session, for the payment of the claim of the petitioner is null and void. It is well established that the courts possess the power to consider an appropriation of

public funds to determine whether it is for a public or a private purpose. That question is not a legislative but a judicial function. The Legislature can not make a private purpose a public purpose by its mere fiat or declaration. *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278; *Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585. Though the legislative finding of a juristic fact is entitled to great weight and serious consideration, such finding is not conclusive. *Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896. When any doubt exists whether the purpose for which an appropriation is made is public or private, such doubt will be resolved in favor of the appropriation; but when it clearly appears that the appropriation is for a purely private purpose, it is void as being beyond the legitimate scope of legislative power to make it. *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278. In that case, this Court uses this pertinent language:

> "The law is too well settled to require an extended argument to the effect that the Legislature can levy taxes and appropriate public revenues, only for public purposes. The power to tax is conferred upon the legislature to be used only for the public. It can not be exercised solely in the interest of a private person or enterprise, notwithstanding there may be no express inhibition on the legislature. 1 Cooley on Con. Lim. 181-185. The right of the legislature to appropriate the public funds is no greater than its right to tax. 1 Cooley on Con. Lim. 184. The limitation upon the legislature requiring it to apply public revenues to public purposes only, is to be implied from the very nature of free government.
>
> "* * *
>
> " 'The legislature is to make laws for the public good, and not for the benefit of individuals. It has control of the public moneys, and should provide for disbursing them only for public purposes.' 1 Cooley, Con. Lim., 184."

The Legislature, in the situation disclosed by the facts in this case, being without power, for the reasons stated,

to declare the claim of the petitioner to be a moral obligation of the State or to make an appropriation of public funds for its payment, that part of Chapter 24, Acts of the Legislature of West Virginia, 1947, Regular Session, which declares the claim of the petitioner to be a moral obligation of the State in the amount of $2,000.00 awarded by the State Court of Claims and directs the auditor to issue a warrant for its payment out of any funds appropriated and available for the purpose, and that part of Chapter 27, Acts of the Legislature of West Virginia, 1947, Regular Session, which appropriates the sum of $2,000.00 from the general revenue fund for the payment of the award in favor of the petitioner as a claim against the West Virginia Board of Control, are unconstitutional, null and void.

The defendant insists that the special act, Chapter 24, Acts of the Legislature of West Virginia, 1947, Regular Session, violates the constitutional provision that "in no case shall a special act be passed where a general law would be proper, and can be made applicable to the case." Section 39, Article VI, Constitution of West Virginia. This argument is unsound. The act in question deals with a number of individual claims, among which is included the claim of the petitioner. The purposes to be accomplished are appropriate for a special act rather than a general law which, with respect to the particular situation involved, is neither necessary nor desirable. The Constitution forbids the passage of a special act in circumstances where a general law is proper and can be made applicable to the case. Here a special act, rather than a general law, is proper, and the act does not, in that respect, violate or offend the foregoing provisions of the Constitution.

As the controlling questions in this case have been resolved, it is not necessary to consider or discuss the other grounds assigned by the defendant in support of his demurrer to the petition.

The writ of mandamus prayed for in the petition is refused.

*Writ refused.*

KENNA, JUDGE, dissenting:

With the full emphasis that is permitted by proper deference to the opinion of my associates I desire to disagree with both the reasoning and conclusion of the majority opinion.

It is quite clear to my mind that in first resting a moral obligation of the State upon: (1) Breach of an existing statute on the part of the State, or injury resulting to an individual by reason of the performance of a duty thereby imposed; or (2) what would be civil liability but for the State's immunity, and following those conclusions by holding that cases where a condition is involved which would give rise to an obligation predicated upon simple right and justice such as a fair and just man should assume in his own affairs even though not compelled by law to do so, as an exception to the general rule first pronounced, is approaching backwards the solution of the problem involved. The stated exception *is* the general rule in jurisdictions which approve appropriations to satisfy "moral obligations" of the sovereign, according to the clear weight of authority. See 42 Am. Jur., page 763, *et seq*. The opinion of the Court recognizes that a moral obligation, as distinguished from a legal obligation is, "* * * a condition which would give rise to an obligation predicated upon simple right and justice such as a fair and just man should assume in his own affairs even though not compelled by law to do so, * * *." In its conclusion of fact concerning Cashman's claim, the Court's opinion says this: "* * * With full knowledge of the obvious risks which attended his work he voluntarily elected to continue his employment. For this he is to be commended and admired. By so doing he rendered, at a risk which became a reality, a noble service to afflicted humanity. * * *." Would not "a fair and just man" discharge a debt of gratitude nobly created? The State of West Virginia was the beneficiary of that service. According to the record, Cashman went to Hopemont in robust health. He went at a time that many members of the medical profession were serving their country in a desperate war, which made doctors in civilian

service few and far between. He went knowing that tuberculosis is infectious and highly dangerous. He knew that the danger was increased by the fact that the hospital at Hopemont was understaffed and the work of both doctors and nurses was more than doubled. It must be assumed that he went with the realization of the legal nonliability of the State of West Virginia if he should contract the disease. I do not believe that it requires "a fair and just man" to look upon the payment of $2,000.00 by the State as a discharge of a moral obligation" to a man who became bedridden for between eighteen months and two years as a result of performing "a noble service to afflicted humanity" in the name of the State of West Virginia.

To discuss Cashman's so-called assumption of risk under these circumstances in my opinion is rather case hardened as well as erroneous. Assumption of risk is in the nature of a plea of confession and avoidance. It is brought into play only where liability of the defendant otherwise exists. See 38 Am. Jur. 845. Therefore, to speak of assumption of risk is to admit the fault of the State, and to take the position that the claimant knew it and that his contract of employment and compensation were based upon working under known dangerous conditions and therefore that he is adequately compensated for the result which he is presumed to have anticipated. The majority opinion denies negligence on the part of the State which would justify recovery between private litigants, but nevertheless deals with Cashman's assumption of risk.

I do not agree with the statement in the majority opinion that in order to justify an appropriation the moral obligation of the State when reviewed by the courts must affirmatively appear and that it must also have been found by the Legislature to exist. Nothing will be found in the opinion of the Court in *Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585, to sustain that proposition. To the contrary we have conformed to the great weight of authority in this country to the effect that the acts of our Legislature will be sustained unless and until their invalidity is plainly established by the person attacking them. Therefore, a

legislative finding that a moral obligation exists on the part of the State of West Virginia is to be regarded as settled fact until the contrary is plainly shown. The person wishing to establish the absence of a moral obligation has the affirmative: not he who depends upon a legislative finding to that effect.

In my judgment the majority opinion violates the substance of the fifteenth syllabus in *Slack* v. *Jacob,* 8 W. Va. 612, which reads as follows:

> "The courts have no right to set aside, to arrest or nullify a law passed in relation to a subject within the scope of the legislative authority, on the ground that it conflicts with their notions of natural right, absolute justice or sound morality."

In addition to violating the substance of the syllabus just quoted it is perfectly plain to my mind that the Court is disregarding the seventh syllabus in the case of *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, a case discussed at length in the Court's opinion without referring to the syllabus just cited, which reads as follows:

> "A fact once determined by the Legislature, and made the basis of an act, is not thereafter open to judicial investigation."

The opinion in *Lemon* v. *Rumsey,* 108 W. Va. 242, 247, 150 S. E. 725, cites the *Woodall* case to sustain the following statement: "Other jurisdictions may support counsels' contention, but this Court is committed to the doctrine that legislative determination of a fact is final." The fourth syllabus in the *Lemon* case is: "A legislative declaration of fact, if not arbitrary, is final." In my opinion the finding of the majority as expressed in its opinion is in direct conflict with the above-quoted syllabuses in the *Lemon* and *Woodall* cases, and if that be true those cases, for the sake of consistency, should at least be discussed and overruled.

The discussion of what is and what is not a "juristic" question carried in the majority opinion, again with proper deference, impresses me as being only an academic

wedge used to split the effect of legislative declarations of fact. The word seems to be used in an attempt to distinguish between actual fact and a conclusion of fact, the latter being partly based upon opinion and therefore "juristic." That approach to the question opens an age old dispute as to whether an actual fact entirely divorced from opinion can be proven and expressed. It is certainly far simpler, more workable, and equally effective to adhere to the rule clearly enunciated in *Lemon* v. *Rumsey,* 108 W. Va. 242, 150 S. E. 725, without attempting to say what matters which the Legislature has declared to be facts are "juristic" and what are not. To my mind the Court's third syllabus is far from clearly stated. The effect of it seems to be that in considering "juristic" facts the Legislature is invading the province of the judiciary, and yet the opinion states that when it does so its finding is entitled to "great weight and serious consideration." To hold that the determination of a moral obligation "based upon facts which give rise to a juristic condition" is a judicial, and not a legislative, function, looking at the matter practically, will rob the Legislature of power to act. There is no way that the courts can advise the Legislature in advance, and it certainly does not wish to risk encroaching upon the powers of another department of government. But regardless of what is meant by the third syllabus, it would certainly be equally just and far more practically understandable to adhere to the rule pronounced in the *Lemon* case.

I look upon chapter 147 of the Acts of 1947, granting some measure of financial relief to those who contract the disease in a state tuberculosis institution, not as a denial of a preexisting moral obligation to this claimant, but to the exact contrary, I think it was an effort to remedy a wrong that applies to a class and to say to that class that if any of its members are injured by recognizedly dangerous employment by the State that they shall be at least partially provided for, an express assurance that this claimant did not have.

To my mind the statement of the nature of this case and its origin made in the first paragraph of the Court's opinion is in error. I do not believe that it can be accurately said that petitioner seeks the issuance of a warrant for the payment of an award made to him by the State Court of Claims. What he seeks is a warrant to be issued by the auditor in payment of an express appropriation made to him by the Legislature of the State of West Virginia. The auditor and the State Court of Claims have no direct official contact or connection.

For the foregoing reasons I dissent from the majority opinion.