Dear Mr. Harrison:
You have requested our opinion regarding the proper prescription applicable to "claims against the State" filed with the Board of Tax Appeals pursuant to R.S. 47:1481-1486.
The Board of Tax Appeals was first created to oversee executive enforcement policy with respect to the collection of taxes from Louisiana taxpayers by the state agency mandated to do so. The board exercises this power, however, only in the form of hearing and determining appeals taken by taxpayers from actions by the state tax collecting agency. Such is the board's primary purpose.
But separate and apart from that purpose, the Legislature decided to give it, in addition, a second, altogether different, function and purpose — to hear any claims against the State and to issue orders recommending to the Legislature whether and/or in what amount they should be paid on an amicable demand basis in advance and avoidance of judicial litigation. In fulfilling the first purpose described above, the board is truly, as its name implies, a board of tax appeals. However, for this additional purpose, the board can be said to "wear a different hat" — that of a "board of control" (as in California, per California Code on Government, Title I, Part 3, §§ 900 et seq.) or a "board of adjustment" (as in Alabama, per Alabama Code §§ 40-9-60 et seq.) or, though less formal, a "court [or board] of claims" (as exist in several other states).
These claims statutes are old and, in some respects, obsolete. They were enacted at a time when the Legislature met only biennially. They were also enacted at a time when Sovereign Immunity from suit and liability was in full and vibrant effect. They offered an efficient, time and cost saving way for persons having claims against the State to obtain consideration and possible payment of those claims from the Legislature on an amicable-demand basis without the necessity of obtaining a legislative waiver of Sovereign Immunity and without the additional time, costs, and formality of two or three tiered judicial proceedings.
Thus, R.S. 47:1481 provides:
 "Any person who has a claim against the State of Louisiana for money erroneously paid into the State Treasury, or for any other claim, may present such claim to the board of tax appeals, in such form and together with such proofs as the board of tax appeals may require by its rules and regulations. The board shall duly examine into the justice, merits and correctness of each such claim presented to it, and shall officially pass thereon."
R.S. 47:1482 provides the board with broad powers to investigate and examine the claims in order to determine their validity and value.
For claims approved by the board in an amount not exceeding $1,000.00, R.S. 47:1483 provides that the board chairman is to issue a warrant on the State Treasurer to have each such claim paid directly from funds that the Legislature is to have already appropriated and set aside for this purpose. Up until the 1989 Regular Session R.S. 47:1484 stated that the Legislature shall appropriate funds to be used for such payments "during the ensuing biennial period." Now it is primarily a directory statute memorializing the Legislature's intent to appropriate funds for the payment of claims approved and recommended for payment by the board.
For claims approved in an amount exceeding $1,000.00, R.S.47:1483 provides that the board chairman, "giving all the facts and circumstances in connection therewith, shall report the same to the next session of the legislature for its consideration." And R.S. 47:1485 contemplates that the Legislature may consider and pay such claim, if it has been first presented to and considered by the Board of Tax Appeals and the board's report thereon has been filed [made available to the Legislature].
Because the board's action is, in essence, a recommendation to the Legislature whether and/or in what amount to pay and voluntarily settle a claim on an amicable-demand, extra-judicial basis only, without a waiver of Sovereign Immunity and prior to judicial proceedings, R.S. 47:1486 provides specifically and expressly that there is no appeal to the courts from the board's action. The board's refusal to recommend that the Legislature voluntarily pay and settle the claim R.S. 47:1481 et seq. has no final or binding effect on whatever judicially-enforceable legal rights the claimant may have and may be able to sue on in court under the general laws governing legal rights and obligations among society. R.S. 47:1486 even says that nothing in these statutes shall deny an unsuccessful claimant the right to petition the Legislature for a waiver of Sovereign Immunity [the first step for instituting a judicial lawsuit to enforce a right against the State under the prevailing practice in existence when these statutes were enacted]. The general import and purpose of similar legislation in California is instructive:
 "The purpose of these [claims] statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citing cases]"
City of San Jose v. Superior Court of Santa Clara County [Lands Unlimited], 115 Cal.Rptr. 797, 525 P.2d 701, 706 (Cal. 1974)
Thus, the primary purpose of R.S. 47:1481-1486 is to provide a procedure whereby an Executive Branch agency can investigate jural claims in advance of litigation, make factual findings for the Legislature on them, and formulate recommendations directly to the Legislature regarding voluntary payment of those which it finds meritorious under the law, so that the Legislature can, upon objective analysis of each claim by the agency, pay legally meritorious claims on an amicable demand, extra-judicial basis without the additional time, costs, and formality of two or three tiered judicial proceedings. The Board of Tax Appeals was the pre-existing agency chosen for such purpose. The statutes are essentially procedural, not substantive.
Therefore, it is our opinion that the properly applicable prescription is the prescription otherwise provided by legislation for the type of obligation that the claim is based on.
For many obligations, this prescription will be the liberative prescription found in R.C.C. Arts. 3492 et seq. For example, it would seem that if a former public official filed a claim against the State for certain emoluments of office due him, R.C.C. Art. 3494 would require application of a three-year prescription. The same would appear to be true for unpaid lodging or restaurant bills that a State agency might incur in holding a conference.
Claims for return of taxes erroneously paid because they were not due (as a result of a tax exemption or the invalidity of the tax levy or the like), in our opinion, are claims based on "overpayment" as defined by R.S. 47:1621.
In this regard, R.S. 47:1623 provides, in pertinent part,
 "A. After three years from the 31st day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is the later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been filed with the secretary by the taxpayer claiming such credit or refund before the expiration of said three-year or one-year period. The maximum amount which shall be refunded or credited shall be the amount paid within said three-year or one-year period."
R.S. 47:1623, by its own title and substance, is a prescription statute in the realm of the public tax law and sets forth the prescriptive period which is applicable, exclusive, and mandatory to all tax "overpayment" claims.
In its definition of "overpayment" for this entire statutory Chapter, R.S. 47:1621(A) expressly includes the payment of a tax "when none was due." Such is precisely what is alleged in filing claims against the State for return of taxes erroneously paid on the grounds that they were not due as a result of a tax exemption or the constitutional invalidity of the tax scheme or the like.
Subsection B of R.S. 47:1621 applies only to refunds and/or credits allowed to be made by the Collector of Revenue on a purely administrative basis without any kind of adjudication by the Board of Tax Appeals or otherwise. (It merely gives some statutory guidelines to the Collector of Revenue and places some limitations and restrictions on his giving away non-adjudicated, non-reviewed refunds and credits on amicable demand claims of "overpayment.")
R.S. 47:1431 et seq. and Subsection D of R.S. 47:1621 are merely two sets of statutory provisions which recognize that the narrower category of claims governed by Subsection B of R.S.47:1621 does not include all "overpayment" claims governed by the definition contained in R.S. 47:1621(A) for the entire Chapter and R.S. 47:1623. Indeed, Subsection D of R.S. 47:1621
provides:
 "D. This section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or the rules and regulations promulgated thereunder. In the event a taxpayer believes that the collector has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie."
Even though it did not expressly say so, Sperry Rand Corporation v. Collector of Revenue, 376 So.2d 505 (La.App. 1st Cir., 1979) (considering a claim for a tax refund allegedly paid and collected on the basis of a misinterpretation of law regarding the constitutional validity of the statutory tax scheme) appears, in effect, to have construed R.S. 47:1481-1486 as providing one of the "instances where such appeals lie," per R.S. 47:1621 (D); otherwise, the remand to the Board of Tax Appeals for further consideration of the claim under R.S.47:1481-1486 would not have been an alternative to the requirement to pay under protest per R.S. 47:1621 (D). In so doing, the Sperry Rand court implicitly defined the word appeal, as it is used in R.S. 47:1621 (D), in its most generic sense — viz., an earnest plea, application, or entreaty made to the Board of Tax Appeals for an action it is authorized to take — and not to mean a specific petition to have the actions of another public entity reviewed for correctness. Compare R.S. 47:2108, which is cross-referenced under R.S. 47:1621 by West Publishing Company in its Louisiana Statutes Annotated, to R.S.47:1481-1486.
This part of the Sperry Rand decision has been subjected to severe criticism by some tax attorneys and State's attorneys. They point out that this interpretation of R.S. 47:1621 (D) is strained at best and overlooks the board's lack of power — a power constitutionally reserved to the courts (as in a R.S.47:1576 case) — to declare a statutory scheme unconstitutional or to provide a definitive interpretation of a statute. They further insist that such interpretation of R.S. 47:1481-1486 is in error and subverts the original and true legislative intent of these provisions, judicially invites a perpetration by the board of a "fraus legis" [Barry Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, 36 Tul. L. Rev. 605, 609 (1962)] — i.e., "a fraud on the law" [id. at 609 and at 634] — in violation of the fundamental principles expressed in R.C.C. Arts. 1-4 (with the resultant abandonment of the equitable resolution of conflicting interests incorporated into R.S.47:1576 by the Legislature and the resultant referral of legally complex claims in huge quantums, for ultimate disposition, to the board's and the Legislature's "unregulated discretion," Nicholas, supra, at 607, which "is ultimately the negation of law," id.), and purports to authorize the board and the Legislature to violate Art. VII, Section 14 (A), of the Louisiana Constitution (1974) by causing the State treasury "to give up something of value when it is under no legal [jural] obligation to do so." City of Port Allen v. Louisiana Municipal Risk Management Agency, Inc. et al., 439 So.2d 399, 401 (LA 1983). Under such criticism, the only post-deprivation remedy available for such a claim would be payment under protest and the filing of suit pursuant to R.S. 47:1576. Coordinately, the U.S. Supreme Court, in McKesson v. Div. of Alcoholic Beverages 
Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), has found such a remedy to be entirely adequate: "The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint," id. at 2254. The High Court also indicated that three-year prescriptions on tax refund actions are, likewise, appropriate. Id., 110 S.Ct. at 2254 n. 28.
Be that as it may, for purposes of an opinion on prescription applicable to the remedy created by the Sperry Rand statutory interpretations, the Sperry Rand decision will have to be deemed, arguendo, to be correct. Notwithstanding this viewpoint, the Sperry Rand decision does not mollify the three-year prescription. Even if claimants allege and assert a "claim against the State" as a qualified instance where a board "appeal" lies, per Sperry Rand, in the alternative to the otherwise paying-under-protest requirement, the Sperry Rand case dealt with a claim for recovery of tax "overpayments" going back only within the statutory three-year period allowed. In Sperry Rand the plaintiff had made its claims for recovery of overpayment (payment of taxes when allegedly "none was due" because of the unconstitutionality thereof) only for those contested taxes paid within the statutory three-year period provided by R.S. 47:1623 — that is, "[d]uring the period from January, 1973, through August, 1975," 376 So.2d at 506, as the claim was made in January, 1976, exactly three years after January, 1973. Therefore, Sperry Rand stands only for the proposition that a taxpayer who has not paid his taxes under protest can still proceed before the Louisiana Board of Tax Appeals for recovery of an alleged tax overpayment on a "claim against the State" basis but only for taxes paid within the statutory three years immediately prior to the filing of the alleged claim. Sperry Rand does not provide authority for claimants to proceed with a recovery of previously paid taxes going back further than the three-year period provided by R.S.47:1623, but rather itself is a demonstration of the applicability of such three-year prescription to the tax "overpayment" type of claim against the State.
You have drawn our attention to R.S. 49:112. We will add that R.S. 39:339 should not be omitted from discussion. Both of these statutes ostensibly enact prescriptive periods for "claims against the State" — the former, a ten-year period, and the latter, a two-year period. Upon closer scrutiny, however, we believe that neither of these statutes apply specifically to those "claims against the State" which are filed with the Board of Tax Appeals under R.S. 47:1481-1486.
R.S. 49:112 states:
§ 112. Claims against state prescribe in ten years
 "No claim or debt against the state shall be allowed by the state auditor or paid by the state treasurer after the lapse of ten years from the happening of the event or of the facts upon which any suit is founded or judgment rendered or of the execution of the contract under which the claim is made. No interruption or suspension whatsoever of this prescription shall be allowed. The provisions of this Section shall not apply to the claims, or the judgment rendered thereon, listed in Section 2 of Act No. 110 of 1946."
The wording used in R.S. 49:112 clarifies that it is not really a prescription statute in the legal sense of that term. There can be no suspension nor interruption of it; if this were a true prescription statute, it could be easily nullified with respect to older claims by the lengthy delays that can accompany legal actions. The language of this provision identifies its intent not so much to create a liberative prescription but rather to impose limitations on the authority of State officials — here the auditor and treasurer — to pay claims generally. Indeed, instead of setting up a prescriptive bar against suit and judicial enforcement of a claim against the State, R.S. 49:112, by such a phrase as "or judgment rendered," even contemplates that the lawsuit is over and the claimant has already won and obtained against the State a final judgment which he is trying to get paid. Regardless of any other time limitations that may specifically govern the periods within which any particular claims may be instituted for adjudication in official legal proceedings, R.S. 49:112 sets up an ultimate time parameter as a criterion and limitation upon the auditor and treasurer, beyond which they cannot pay a claim, even if the claimant has already been to court, interrupted and suspended the true prescriptive period applicable to the type of claim he has, and has obtained a final judgment against the State. It is an outer time limitation that applies in addition to true prescriptive statutes, not instead of them. The express and specific wording of this statute certainly does not suggest that its intent is to guarantee the continued existence, vitality, and enforceability of any claim for ten years.
R.S. 39:339 reads:
§ 339. All claims to be exhibited to commissioner of administration
 "All persons having claims against the state shall exhibit them, with supporting evidence to the commissioner of administration or his duly authorized representative to be audited, settled and allowed, within two years after the claim accrues. No claim or debt shall be allowed against the state unless exhibited to the commissioner of administration or his duly authorized representative, except when it is proved that the claimant or creditor has vouchers which he could not produce to the commissioner of administration or his duly authorized representative on account of sickness, unavoidable accident or absence from the state."
This statute is more problematic, and we must recognize that, as probably the latest expression of legislative will on the point in question from among R.S. 47:1623, R.S. 49:112, and itself, it might be held by a court to supersede these others. It would almost certainly be deemed to supersede R.S. 49:112, as the office referred to in that statute as "the state auditor" no longer exists: The office of "Auditor" appeared in the 1921 Constitution and later underwent a nomenclatorial change to the office of "Comptroller." See Act 609 of the 1960 Regular Session. As a separate constitutional office, it did not survive after the 1974 Constitution. Rather, its duties and functions were merged into the Division of Administration, and the Commissioner of Administration, to whom claims against the State are now presented under R.S. 39:339 above, performs the function formerly performed by the State Auditor/Comptroller. See R.S. 39:333.1 and 334.
Having said that, it is our opinion that R.S. 47:1623, being specifically applicable to tax refund claims against the State, has not been superseded by this more general statute, R.S.39:339, dealing with all claims against the State. Moreover, R.S. 47:1623 is, through R.S. 47:1621, specifically associated with Board of Tax Appeals claims, while R.S. 39:339 appears to be specifically applicable only to claims presented to the Commissioner of Administration.
Consequently, our opinion is that the peculiar three-year period expressed in R.S. 47:1623 (A) is the prescriptive period properly applicable to all "claims against the State" brought under R.S. 47:1481-1486 (as interpreted by the Sperry Rand case) for a recovery of taxes paid "when none was due," R.S. 47:1621
(A), because of the unconstitutionality of the tax scheme under which such taxes were paid and collected.
In addition, the three-year prescriptive period permeates public tax law on all sides and is and should be consistent and universal for all tax actions — be they for refunds or collections. Thus, besides R.S. 47:1623 (A), there is ArticleVII, Section 16, of the Louisiana Constitution (1974).
Our attention has been called to a forty-five year old attorney general's opinion (Opinions of the Attorney General, 1946-1948, p. 1104) which concluded — for that time in the law — that there was no applicable prescriptive period because, due to then existing Sovereign Immunity, no claim against the State could be viewed as a legally enforceable obligation to which a statutory prescriptive period would be applicable. The abrogation of Sovereign Immunity in Board of Commissioners of the Port of New Orleans v. Splendour Shipping Enterprises Co., Inc., 273 So.2d 19
(La. 1973) [Cf. Article XII, Section 10 (A), of the 1974 Constitution], has dated this opinion in reason and validity, and it cannot currently prevail as sound legal advice. Even back then in the heyday of Sovereign Immunity, the West Virginia case of State ex rel. Cashman v. Sims, 43 S.E.2d 805 (W.V. 1947) (denying a writ of mandamus to the state auditor compelling him to issue a warrant upon the state treasurer for the payment of a claim approved by the state court of claims) illustrated:
 "The sound and just general rule by which a moral obligation of the State in favor of a private person may be recognized, and for the payment of which a valid appropriation of public funds in the interest of the public may be made by the Legislature, requires the existence of at least one of these components in any particular instance: (1) An obligation or a duty, by prior statute created or imposed upon the State, to compensate a person for injury or damage resulting to him from its violation by the State or any of its agencies, or to compensate him for injury, damage, or loss sustained by him in or by his performance of any act required or authorized by such statute; or (2) an obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons."
Id. at 814. If such an obligation did not exist, "an appropriation of public money for private use is beyond the legitimate scope of legislative power and, for that reason, is invalid." Id. at 811. And, conformably, today in Louisiana the case of City of Port Allen v. Louisiana Municipal Risk Management Agency, Inc. et al., supra, clarifies that payment of public funds to private persons for their private use when there is "no legal obligation to do so," id. at 401, is a violation of Art. VII, Section 14 (A), of the Louisiana Constitution (1974) and, therefore, beyond even the Legislature's power.
The Board of Tax Appeals itself has applied the three-year prescriptive rule. In the appeal of Lance D. Alworth d/b/a Personal Storage, II v. Secretary, BTA No. 3581, the claimant originally sought a recovery of taxes for years 1983 to 1990. The secretary refunded taxes for the statutory three-year prescriptive period, and then the claimant renewed his appeal for the remainder of taxes paid from 1983 through 1986. The department at this point, however, did not plead the statutory three-year prescription but rather a constitutional prescription that was specifically inapplicable to the refund claim. Following its own rule to decide cases in the same manner as state courts, the board overruled the inapplicable prescription, and in the same manner as state courts which are prohibited from themselves "supply[ing] the exception [or plea] of prescription [properly applicable] as to [the action before it]," Payne v. Trichel, 397 So.2d 16, 20 (La.App. 3rd Cir. 1981) (holding that properly applicable one-year tort prescription could not be supplied by court for inapplicable one-year redhibition prescription pled by lending institution), the board did not itself supply the properly applicable statutory three-year prescription. However, when faced with a similar situation in Robert and Susan Cothell v. Secretary, BTA No. 3845, the board properly sustained the statutory three-year prescription which was, in that appeal, actually urged by the department. In this regard, it must be emphasized that the two appeals were virtually identical in the factual allegations pertinent to the prescription argument, and the board, by its own rule again, hears and makes determinations in the same manner as state courts wherein, for purposes of deciding matters before them, the rule of law required is:
 "So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence; the `theory of the case' [has been] abolished as a pleading requirement or restriction."
Cox v. W.M. Heroman Co., Inc., 298 So.2d 848, 855 (1974).
And finally, of course, even if R.S. 47:1623 (A) did not specifically apply to those particular tax refund "claims against the State" recognized and delineated by the Sperry Rand decision, the Board of Tax Appeals could and should impose the same three-year limitation on the basis of equitable principles. If, according to Sperry Rand, such claims are to be resolved with justice and equity, such claimants should have no greater rights thereunder than those otherwise similarly situated claimants who have proceeded according to the applicable legislation. By adopting an equitable policy analogizing a similar time limitation as that contained in R.S. 47:1623 (A), the Board of Tax Appeals would balance all claimants at the same prescriptive level — the same three-year level that is consistent and common among tax actions.
Trusting that this opinion has covered the full scope of your inquiry, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
TSH:0703f