296 So.2d 865 (1973)
William L. KEARNEY and Cecelia Lazard Kearney
v.
Hardy MALONEY et al.
No. 5835.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
On Rehearing December 10, 1973.
On Limited Rehearing June 11, 1974.
Murray & Murray, Ltd., Stephen B. Murray, New Orleans, for plaintiffs-appellants.
*866 Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer, New Orleans, for Hardy Maloney, defendant-appellee.
Flettrich & Hennesy, Albert J. Flettrich, New Orleans, for Dryades Savings and Loan Assn., defendant-appellee.
Joseph F. Blasi, Jr., John J. Blasi and Thomas J. Blasi, New Orleans, for James H. Smith, defendant-appellee.
Before SAMUEL, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
Plaintiffs have appealed a judgment maintaining defendants' exception of prescription and dismissing their suit. The ruling of the trial court is based on the allegations in plaintiffs' petition, which, for the purposes of deciding this exception, are deemed to be true.
On March 15, 1967, plaintiffs, William L. Kearney and Cecelia Lazard Kearney, signed an agreement to buy from Hardy Maloney a house located at 1013 West William David Parkway in Metairie. James H. Smith was the realtor who brought buyer and seller together. On May 15, 1967, plaintiffs acquired title through an act of sale and resale from Maloney to Dryades Savings and Loan Association to plaintiffs. The seller, the realtor and the lending institution were all named defendants.
It was not until plaintiffs moved in that they learned the foundation and supports had been irreparably damaged by a fire of which they had not been made aware before taking title. They claim the seller made repairs only to those parts of the house that were visible and readily inspectable. Plaintiffs consulted contractors and engineers with a view toward effecting the necessary repairs, but they were advised it was not economically feasible to do so.
Plaintiffs did not precisely state when they learned of the concealed fire damage or when they abandoned hope of remedying it. In fact their allegation as to the time of discovery, upon which the defendants' plea of prescription is based, reads: "* * * Petitioners do not recall the date on which they were advised, except to state that it was more than one year after the date of purchase of the said home, and more than one year prior to the filing of this action." Suit was filed May 11, 1972.
The relief sought by plaintiffs, as reflected by their prayer, is for a judgment "* * * rescinding the sale * * * and ordering defendants to return to petitioners the price paid for the said home * * *" plus damages. This demand is based on allegations of fraudulent conduct by each defendant involved in the transaction. Plaintiffs allege these specific acts of fraud:
1. The seller represented the house was in sound condition when he knew it was not.
2. The realtor knew of the fire damage, and not only failed to disclose this information, but further represented the home to be in sound condition.
3. The homestead learned of the damage after the buy-sell agreement was signed but before the act of sale was passed, and withheld this information from plaintiffs.
Defendants contend that this petition sets forth an action in redhibition that is subject to the one-year limitation set forth in LSA-C.C. arts. 2534 and 2546; that plaintiffs admit suit was filed more than one year after the sale and more than one year after they discovered and abandoned any thought of repairing the defective structure; and that, therefore, the right to sue for an avoidance of the sale has prescribed.
Plaintiffs concede that if redhibition is their exclusive remedy the judgment of the trial court is correct. However, they argue the allegations of fraud setting forth affirmative misrepresentations as to the quality of the object exempts them from *867 the one-year limitation imposed in actions of redhibition and permits them to bring an action in nullity under LSA-C.C. art. 2547. They point out the prescriptive period for rescission of a contract based on error induced by fraud is five years under LSA-C.C. art. 3542. In other words, they claim the affirmative misrepresentation as to quality of the thing sold gave them the option to bring an action in redhibition or an action to rescind the contract.
We find merit in plaintiffs' position. When we analyze those articles defining the liability of the seller under various circumstances when the sale is judicially avoided, the logic of plaintiffs' contention is persuasive. We note at the outset the introductory article of Title VII of the Civil Code dealing with the contract of sale states:
"In all cases, where no special provision is made under the present title, the contract of sale is subjected to the general rules established under the title: Of Conventional Obligations." Art. 2438.
Chapter 6 of this title, addressing itself to the Obligations of the Seller, includes a section (3) entitled "Of the Vices of the Thing Sold" (Articles 2520-2548). These articles, inter alia, set forth the seller's liability under three different sets of circumstances, namely, (1) when he delivers a defective object to the buyer but is unaware of the vice; (2) when he knows of the vice at the time of delivery and fails to disclose it to the buyer; and (3) when he is aware of a defect, but affirmatively represents to the buyer the object has a quality he knows it does not possess.
In the first instance if the contract is avoided, the good faith seller must "* * * restore the price, and * * * reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing * * *." Article 2531. In the second and third instances, the seller in bad faith may be made to restore the price, to reimburse the expenses occasioned by the sale (including the buyer's attorney's fees), and to respond in damages. Articles 1934, 2545 and 2547. This is true whether the seller's breach was a failure to disclose or an affirmative misrepresentation as to quality. For purposes of comparison, we quote:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." Art. 2545.
"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
"It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer." Art. 2547.
How Article 2547 differs from Article 2545 is in affording the buyer victimized by an affirmative representation the option of proceeding in redhibition or in nullity to have his action "* * * judged according to the rules laid down on the subject, under the title: Of Conventional Obligations." Article 2438 states where specific rules are enacted concerning sales the contract and all actions arising therefrom are governed thereby. The article makes it clear that only in the absence of a specific rule does the law regulating conventional obligations govern. As we view it, the redactors of the Code enacted Article 2547 and adopted language similar to Article 2438 in its passage to clearly state the buyer, relying on a false declaration as to quality in entering the contract, was not restricted to the rules set forth in the redhibition section in seeking redress.
Article 2547 has no counterpart in the Code Napoleon. However, Article 2534, establishing the one year prescriptive period *868 for actions in redhibition is derived from Code Napoleon Article 1648, which required institution of such actions "within a short time."
In commenting on the prescriptive period in cases of redhibition, Planiol in his Treatise on The Civil Law[1] distinguishes between the action in redhibition and the action in nullity that might result from the sale of a defective object. Section 1466 states in part:
"In the terms of Art. 1648, these actions should be instituted `within a short time' which the law has not fixed. The judge therefore has, in principle, discretionary power in determining whether the buyer still has time to act (Cass., 27 June 1887, D. 88.1.300, S. 87.1.316: Cass. Civ., 8 April 1925, D. 1927.1.41, P. and S. 1925.1.131). However it is intended that he should conform to local customs when these exist (same article)."
In the following section the French commentator explains the rationale behind allowing the buyer a longer time within which to bring his suit where the error as to quality existed at the time of the sale but was concealed by the seller, as follows:
"Because of this exceptional rule, it is very important to distinguish the redhibitory action founded on a concealed vice, and the action in nullity because of an error as to a substantial quality. The first prescribes in a very short time, the second prescribes in ten years (Art. 1304). If the law accords only a brief delay to act in the case of vice, it is because such vice has perhaps not always existed, and it may arise after the sale, in which case the vendor is not responsible, while the substantial quality of a thing does not change; it is inherent in its nature."
In enacting LSA-C.C. art. 2547, we think the redactors of the Civil Code incorporated into Louisiana law the distinction pointed out by Planiol between redhibition and nullity. Accordingly, we find the seller cannot avail himself of the provisions of LSA-C.C. art. 2534 to have plaintiffs' suit against him dismissed.
As to the realtor and the homestead, plaintiffs' suit against them is not governed by that section of the Code regulating actions in redhibition simply because there is not a vendor-vendee relationship between these protagonists. While it is true the homestead is a nominal vendor for the limited purpose of securing a vendor's lien on the property on which it holds the mortgage, our courts have held it is not a seller within the contemplation of codal articles dealing with redhibition. See Ready v. Rhea, 222 So.2d 560 (La.App. 2d Cir. 1969). It therefore follows that since Smith and Dryades Savings and Loan Association are not vendors in the sale, they cannot urge the redhibitory prescriptive limitation of one year in bar of plaintiffs' action against them.
For the reasons assigned, the judgment of the trial court insofar as it maintains the exceptions of prescription urged by Hardy Maloney in bar of an action in redhibition is affirmed; however, insofar as it dismissed the plaintiffs' suit in its entirety said judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with the views herein expressed. Appellees are to pay all costs of this appeal.
Affirmed in part; reversed in part; and remanded.

ON APPLICATIONS FOR REHEARING
Before SAMUEL, STOULIG and SCHOTT, JJ.
PER CURIAM.
Plaintiffs, Mr. and Mrs. William L. Kearney, and all three defendants, Hardy Maloney, vendor; James H. Smith, realtor; and the Dryades Building and Loan Association *869 have filed applications for rehearing. From these it is apparent our original opinion requires clarification. We held:
1. Plaintiffs' suit against Hardy Maloney sounding in redhibition had prescribed under LSA-C.C. art. 2534. Plaintiffs' petition also set forth an action in nullity seeking avoidance of a contract because of error induced by fraud. The nullity action has not prescribed and this aspect of plaintiffs' claim against the vendor Maloney is viable.
2. The realtor and the homestead, not occupying a vendor relationship to plaintiffs, cannot plead the prescription of Article 2534 as a bar to this action, because this article is limited to actions in redhibition (the avoidance of an act of sale).
The applications on behalf of the realtor and the homestead correctly point out we unduly restricted our consideration of their exceptions of one-year prescription to the provisions of Article 2534 dealing with redhibition. In this we erred. We think these litigants should have another opportunity to urge these exceptions.
The applications for rehearing of the plaintiffs, Mr. and Mrs. William L. Kearney, and the defendant Hardy Maloney are denied.
A rehearing is granted to James H. Smith and Dryades Savings and Loan Association for the limited purpose of reurging their exceptions of one-year prescription. The rehearing will be decided, without oral argument, on briefs to be submitted by James H. Smith and the Dryades Savings and Loan Association on or before December 18, 1973 and by plaintiffs, Mr. and Mrs. William L. Kearney, on or before December 28, 1973.

ON LIMITED REHEARING
Before SAMUEL, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
We granted a rehearing for the limited purpose of permitting defendants James H. Smith, the realtor, and the Dryades Savings and Loan Association to reconsider our ruling on their exceptions of one-year prescription.
Plaintiffs explain their theory of liability against these defendants in the quoted allegations of the petition:
"The said agent then knew that the home had previously been extensively burned, causing basic and irreparable structural damage. The agent also knew that the defendant, Hardy Maloney, had made repairs to the visible and inspectable parts of the house, without correcting the basic structural damage to the house, its foundation and its appurtenances. The said agent nevertheless fraudulently failed to inform petitioners of the true condition of the home and, further, fraudulently represented the home to be in sound condition."
and
"Subsequent to the above contract, petitioners contracted with the defendant, Dryades Savings and Loan Association, to finance the said purchase. The said defendant either then knew or subsequently became aware of the true condition of the home and fraudulently failed to advise petitioners."
The realtor and lender argue plaintiffs' complaints against them sound in tort and actions based on quasi offenses under LSA-C.C. art. 2315 prescribe in one year under LSA-C.C. art. 3536. Suit was filed more than one year after the defective condition was discovered.
Plaintiffs concede it is essential for us to find a contractual relationship between either or both of these defendants to defeat their respective pleas of prescription. As to the homestead, clearly there is none. No obligation devolves on the lender from any contract between it and the borrower to inspect the premises for soundness. Plaintiffs' suit against the lender is ex delicto and on the face of the pleadings, it had prescribed.
*870 To defeat the plea of prescription urged by the realtor, plaintiffs argue a quasi-contractual relationship exists between them. This position is without merit. It is true the statutes establishing the licensing procedure for real estate brokers (LSA-R.S. 37:1431 et seq.) imposes on all realtors an obligation to conduct business ethically. Their failure to do so may give rise to a cause of action authorized by R.S. 37:1447 as follows:
"A. Before any person opens, engages in, manages or conducts any real estate agency or office, or deals in real estate or rent collecting, as a broker, either in an office or otherwise, such person shall furnish bond from a surety company authorized to do business in Louisiana with security in favor of the governor. In the event the broker opens a branch office he shall not be required to furnish an additional bond. The bond shall be in the amount of five thousand dollars and shall be for the benefit of any person in interest, as his interest may appear, and shall be conditioned that the broker shall carry out the objects and purposes for which his agency, office or business has been established, and that the broker shall honestly conduct his business and pay all damages which may result from his actions as a real estate broker or from actions of his salesmen. The surety company may be sued either in the parish of its domicile or in the parish in which the broker resides or is domiciled.
"A. Anyone who is injured or damaged by the broker or his salesmen by any wrongful act done in the furtherance of such business or by any fraud or misrepresentation by the salesmen or broker may sue for the recovery of the damage before any court of competent jurisdiction."
The effect of this section is to create a cause of action ex delicto for damages incurred by any members of the general public as a result of a broker's dereliction, even though no contractual relationship existed between the complainant and the realtor. See Amato v. Latter & Blum, Inc., 227 La. 537, 79 So.2d 873 (1955).
In Davis v. LeBlanc, 149 So.2d 252, 254 (La.App.3d Cir. 1963), the court concisely differentiated between contractual and tortious damages as follows:
"The classical distinction between `damages ex contractu' and `damages ex delicto' is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons. * * *"
It is clear from the quoted allegation on which the plaintiffs' claim is based the damages allegedly due flow from a breach of a duty owed to the public at large. Until the buyer-seller agreement was signed by the purchaser, the realtor did not become his agent for any purpose. Accordingly the plea of prescription urged by Smith is valid.
For the reasons assigned, the original decree of this court is recalled and it is now ordered, adjudged and decreed that the judgment of the trial court is affirmed insofar as it maintains the plea of prescription of Dryades Building and Loan Association and of James H. Smith and insofar as it dismisses plaintiffs' suit against them. It is further ordered that the judgment maintaining the plea of prescription urged by defendant Hardy Maloney is reversed and this matter is remanded to the trial court for further proceedings. Plaintiffs are to pay the court costs incurred by Dryades Building and Loan Association and James H. Smith. All other costs are to await the final determination of this matter.
Original decree recalled; affirmed in part; reversed in part; and remanded.
NOTES
[1] Volume 2, Part I, translated by the Louisiana State Law Institute.