397 So.2d 16 (1981)
Ralph E. PAYNE et ux., Plaintiffs-Appellants,
v.
Dewey TRICHEL, et al., Defendants-Appellees.
No. 8016.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
Rehearing Denied April 27, 1981.
*17 Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for plaintiffs-appellants.
Michael Henry, Gahagan & Gahagan, Marvin F. Gahagan, Whitehead & McCoy, Kenneth D. McCoy, Jr., Natchitoches, for defendants-appellees.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
This is an action in redhibition involving residential construction. Plaintiffs-appellants sued the vendors, the mortgagee and the real estate broker who brought the buyer and seller together.[1] Each defendant *18 filed an exception of prescription of one year. The trial judge sustained the exceptions and dismissed plaintiffs' suit.
The issue in this case is whether appellants are saved from the effect of the one year prescription applicable to redhibition on the ground that they did not learn the cause of the cracking of the floor and other parts of the house until less than one year from the time that they filed suit.
As stated in their brief, appellants' position is as follows:
"As indicated by the pleadings, on July 1, 1977 Mr. and Mrs. Ralph L. Payne purchased from defendants, Dewey Trichel and his wife, the vendors' family home located in Natchitoches, Louisiana. Mr. Payne was then and still remains employed by Alcorn University in Mississippi, although his domicile remains in Natchitoches, and because of his rare visits to Natchitoches, most of the preliminary transactions and subsequent care of the home were left to his father, Mr. L. A. Payne, Sr.
"The purchasers knew of no serious vices or defects in the home at the time of the purchase thereof. The vendors were, consistent with the purchase agreement, allowed to continue the occupancy of that home until mid-February of 1978, at which time they moved out and surrendered possession thereof. Soon thereafter, Mr. L. A. Payne, Sr. began looking after the premises, cutting the grass, and in August or September of 1978 he suddenly discovered "pronounced" cracks occurring in the foundation and masonry work of the home. At that time he also observed that the brick chimney was "pulling away" from the house. Immediately thereafter, Mr. Payne engaged a Mr. C. J. Causey, Louisiana Soil Stablization, Inc., of Bossier City, Louisiana, who traveled to Natchitoches and made a study which revealed that a grossly inadequate home foundation existed and on September 25, 1978 Mr. Payne signed a contract with Mr. Causey to complete certain home foundation stablization procedure at a cost of some $4,900.00.
"The trial evidence indicates that it was not until the completion of this study by Mr. Causey in September of 1978 that the purchasers became aware of the cause of the rather sudden masonry cracking and the chimney pulling away from the house. At that time Mr. Payne discussed the matter with First Federal Savings and Loan Association, the mortgagee (November 1978), and it was a result of that discussion that purchasers retained legal counsel to assist them in the resolution of the problem.
"The instant suit was filed on May 30, 1979more than one year subsequent to purchase, but less than one year following discovery.
"Defendants, who included the vendors, mortgagee, and real estate broker of vendors, all filed pleas of prescription. Following hearing thereof, the prescriptive pleas were sustained by the trial court, resulting in this appeal."
At the trial of the case neither of the plaintiffs-appellants testified. Mr. L. A. Payne, the father of Ralph L. Payne, testified for plaintiffs-appellants. The testimony establishes that the defects complained of were pointed out by Mr. Trichel to Ralph L. Payne and his father on April 10, 1977, prior to the purchase of the home by plaintiffs-appellants.
Appellants place reliance on the case of Hill v. John L. Crosby, Inc., 353 So.2d 421 (La.App. 4th Cir. 1977). The plaintiff in the Hill case noticed severe mildewing and rotten boards more than one year before suit was filed. The Court of Appeal for the Fourth Circuit held that because the plaintiff did not discover the cause of the mildew until within one year of filing suit prescription had not run. Applying this authority to this case appellants contend prescription *19 did not begin to run until discovery of the inadequate foundation was made by Louisiana Soil Stablization, Inc. We recently had this contention under consideration in Lee v. Equitable Life Assurance Soc. of U. S., 391 So.2d 37 (La.App. 3rd Cir. 1980).
In the Lee case we disagreed with the holding of the Fourth Circuit in the Hill case. The Lee case also involved residential construction. Plaintiff there first discovered water seeping into a den after heavy rains. Not until sometime later did plaintiff discover the underlying cause of the defect. The source of the seepage was a "spring". The house was constructed adjacent to the spring and water from the spring would flow against the house whenever a substantial rain occurred. We held that discovery of the seepage was such notice as would trigger the running of the prescriptive period applicable to redhibitory actions. For the same reasons we gave in Lee, prescription of the action in redhibition against the sellers began to run against the Paynes on the date of their purchase, because they were already aware of serious cracking in various parts of the house purchased from the Trichels.
The plaintiffs seek to avoid the consequences of the articles of the Civil Code establishing a one year prescription either from the date of sale or date of discovery of the defect through reliance on the case of Kearney v. Maloney, 296 So.2d 865 (La.App. 4th Cir. 1974). That case involved an action in redhibition concerning a home that Maloney sold to William L. Kearney and his wife. The Kearneys alleged that after they moved into the house they learned that the foundation and supports had been irreparably damaged, that they were not made aware of these defects and that the seller had made repairs only to those parts of the house which were visible and readily inspectable. In Kearney the Court of Appeal held that the prescription of one year provided by LSA-C.C art. 2534 did not apply. The cause of action was treated as an action for nullity rather than redhibition. The action was characterized as one involving fraud as contemplated by redhibition article 2547. The court held that LSA-C.C. art. 3542 provides that in actions for nullity or rescission of contracts induced by fraud the prescriptive period is five years.
Louisiana Civil Code redhibition articles 2534, 2545, 2546 and 2547 provide in pertinent part as follows:
"Art. 2534. Prescription of redhibitory action; exception and suspension. The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
* * * * * *
"Art. 2545. Liability of seller for concealment of vice. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages. (Amended by Acts 1968, No. 84, § 1.)
"Art. 2546. Prescription of redhibitory action when seller in bad faith. In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
This discovery is not to be presumed; it must be proved by the seller.
"Art. 2547. Fraud on the part of the seller; rights of the buyer. A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.

"It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer. (Amended by Acts 1968, No. 84, § 1.)"
We need not consider the correctness of the holding in Kearney. The rationale of that case rests upon the provision in *20 Article 2547 that misrepresentation by a seller that a thing possesses a quality it does not possess "comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject...". The petition in the instant case does not allege fraud and the evidence does not establish misrepresentation by the seller. In Kearney plaintiffs alleged actual concealment of irreparable defects. The Court of Appeal for the Fourth Circuit treated this as an allegation of fraud.
In the instant case the trial court sustained the exceptions of prescription filed by the real estate broker and the lending institution. Neither was a seller. Hence, the exception of prescription of one year under the redhibition article, LSA-C.C. art. 2534, was not available to them. Kearney v. Maloney, supra, on limited rehearing, and Williams v. Lucien J. Caruso, Inc., 374 So.2d 113 (La.App. 4th Cir. 1979). The allegations of the Payne's petition pertinent to Cele Cook and First Federal Savings and Loan Association are contained in paragraphs 6 through 10 which read as follows:

"6.
"Petitioners show that they arranged for First Federal Savings & Loan Association of Natchitoches to Appraise, inspect, and finance the purchase thereof.

7.
"Consistent with the above, First Federal Savings & Loan Association did cause home to be examined, inspected, and appraised, as more fully shown by a copy of said appraisal attached hereto and made a part hereof.

8.
"Consistent with the above, petitioners borrowed from First Federal Savings & Loan Association the sum of $30,000.00, as more fully shown by a copy of the loan settlement attached hereto and made a part hereof, together with a true copy of said mortgage also attached hereto and made a part hereof.

9.
"Cele Cook, d/b/a Cook Realty Company, was at all pertinent times herein acting as the real estate agent for plaintiffs herein, as more fully shown by said agreement attached hereto and made a part hereof.

10.
"Petitioners show that defendants, First Federal Savings & Loan Association, Cele Cook, d/b/a Cook Realty Company, possessed such expertise relative hereto that each knew or should have known of the vices and defects; that said defendants were obligated to advise petitioners thereof, the failure of which constitutes a breach of duty owed."
The most that can be said for plaintiffs' pleadings is that paragraph 10 of the petition may set forth an action in tort against the broker and lending institution. After the plaintiffs' appealed to this court the real estate broker, Cele Cook, availed herself of LSA-C.C.P. art. 2163 and filed an additional exception of prescription in this Court of Appeal. In this exception Cele Cook broadened her exception to plead prescription "by passage of one year under the provisions, inter alia, of Louisiana Civil Code article 3536." This article provides a one year prescription period for tort actions. The evidence supports an exception of prescription on these grounds. Therefore, we sustain the exception filed by Cele Cook.
First Federal Savings and Loan Association relied on LSA-C.C. art. 2534 specifically. It did not plead prescription under LSA-C.C. art. 3536. We cannot supply the exception of prescription as to any tort action.[2] LSA-C.C.P. art. 927. Under *21 the circumstances we are of the opinion that First Federal cannot rely on the prescription of one year for a tort action, LSA-C.C. art. 3536. We entertain some doubt as to whether in a case of this nature a cause of action exists in favor of a buyer against a lending institution. However, the matter has not been argued before us and we pretermit any consideration of the question at this time.
For the foregoing reasons we affirm the judgment of the trial court insofar as it sustains the exception of prescription filed by Dewey Trichel and Mary Eretta Trichel and by Cele Cook, doing business as Cook Realty; we reverse the judgment of the trial court insofar as it sustains the exception of prescription filed by First Federal Savings and Loan Association of Natchitoches, Louisiana and the exception is hereby overruled; this case is remanded to the trial court for further proceedings consistent herewith. The costs of this appeal shall be assessed to plaintiffs-appellants.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

On Applications for Rehearing
PER CURIAM:
The rehearing applied for in this case by defendant-appellee, First Federal Savings and Loan Association, Natchitoches, Louisiana, is denied.
In the alternative to the application for rehearing, First Federal Savings and Loan Association attached to its application an exception of prescription of one year to any tort action plaintiffs may have on the basis of LSA-C.C. art. 3536. It is suggested that this plea of prescription may be filed at any stage of the proceedings in this court. As a general proposition this is true as provided in LSA-C.C.P. art. 2163. However, the article provides that such exceptions (confined to peremptory exceptions) may be filed for the first time in a court of appeal and may be considered "if pleaded prior to a submission of the case for a decision ...". As the exception of prescription in question was filed after the case was submitted to us for a decision, we may not consider it. Ware v. Wilson, 283 So.2d 813 (La.App.2d Cir. 1973), writ denied, 284 So.2d 774 (La.1973).
Our action is without prejudice to the right of the applicant to file the same exception in the trial court after the matter has been remanded in accordance with our decision on original hearing.
NOTES
[1] Plaintiffs-appellants set forth their demands in their First Supplemental and Amending Petition as follows:

"A. (1) a recission of the sale and return of the purchase price:
(2) payment to petitioners of the sum of Four Thousand, Nine Hundred and No/100 ($4,900.00) Dollars, which they have expended in an effort to prevent the house from literally falling down;
(3) cancellation of the mortgage note to First Federal Savings and Loan Association and return of all interest paid;
(4) recovery of all realtor's fees paid to Mrs. Cele Cook, d/b/a Cook Realty;
(5) attorney fees in the sum of Seven Thousand, Five Hundred and No/100 ($7,500.00) Dollars; and
(6) damages, including mental anguish, time lost, loss of use of house and otherwise, in the sum of Ten Thousand and No/100 ($10,000.00) Dollars.
"B. In the alternative, petitioners pray that they be granted a judgment for money damages against defendants herein in solido in a sum equal to the original purchase price, plus all interest payments, fees and attorney fees in the sum of not less than Seven Thousand, Five Hundred and No/100 ($7,500) Dollars, plus Four Thousand, Nine Hundred and No/100 ($4,900.00) Dollars expended on repairs, plus Ten Thousand and No/100 ($10,000.00) Dollars in damages.
"C. In the further alternative, and in the alternative only, petitioners pray that they be granted a reduction of the purchase price equal to the cost of repairs already made in the sum of Four Thousand, Nine Hundred and No/100 ($4,900.00) Dollars, plus anticipated additional repairs in the sum of Five Thousand and No/100 ($5,000.00) Dollars, together with reasonable attorney fees in the sum of Seven Thousand, Five Hundred and No/100 ($7,500.00) Dollars, and damages in the sum of Ten Thousand and No/100 ($10,000.00) Dollars; and that this judgment be against all defendants in solido.
"Petitioners further pray for all costs."
[2] First Federal Savings and Loan Association relies on Williams v. Lucien J. Caruso, Inc., supra. In that case a lending institution was a defendant in a redhibition action involving a house. The other defendant was the builder-seller. Both of these defendants filed exceptions of prescription "on the ground that the petition sounds in tort and/or redhibition".