NORRIS, Judge.
The seller of a wood-treating chemical sued the buyer on a past due open account. The buyer reconvened for past and future repairs allegedly necessitated by the failure of the seller’s product in wooden materials the buyer ultimately sold to third parties. By exception the seller urged the reconventional demand was one in redhibition and had prescribed. After a hearing on the exception, the trial court held that as to past repairs the reconventional claim was in redhibition and had prescribed, but as to future repairs, possibly to be claimed against Arnold by third party purchasers, Arnold could call Idacon on a warranty ex contractu. The buyer now appeals the first part of the judgment and the seller, by answer, appeals the second. For the reasons expressed, we amend and affirm.

*1292
Facts

The seller, Idacon Inc., is a manufacturer that produces a line of wood-preserving chemicals. The major component of these chemicals is pentachlorophenol or “penta.” One of Idacon’s products, called “P-9,” is a mixture of penta in oil and is dispersed into the wood via an oil-based carrier. By the late 1970s, in response to rising oil prices, Idacon’s chemist Roy Kirchner developed a water-based dispersal system for the penta in oil mixture. He called it “Dura-Treet II” and obtained a patent on it; Idacon began marketing it, making assurances that it was equal or superior to P-9.
The buyer, Arnold Construction (“Arnold”), buys untreated lumber products, treats them and then sells them to contractors. Starting in 1979, Arnold used Ida-con’s P-9. Soon Kirchner and a salesman came to Arnold and introduced the new product. They promised that Dura-Treet II was comparable to P-9, and that even though scientific testing had not yet been performed, Idacon would initiate proper testing by an independent lab. Arnold decided to switch to the new product. It entered a licensing agreement with Kirchner for the process and bought Dura-Treet II from Idacon continuously until 1984.
According to Arnold’s petition in recon-vention, in April 1981 one of its customers, the Texas Highway Commission, stopped shipment of Arnold’s Dura-Treet II guard rails, allegedly because of test results from Southwestern Laboratories. Idacon nevertheless assured Arnold that Dura-Treet II met all applicable standards. In fact, an industrial association, the AWPA, concluded in December 1981 that Dura-Treet II met the same requirements as P-9. In May 1984 other customers began to complain that their Dura-Treet II materials bought from Arnold were rotting. In October 1984 a Texas customer demanded damages for a rotted fence. Arnold claims to have communicated these complaints to Idacon in January or February 1984, when Idacon began inquiring about Arnold’s past due account. Arnold finally reduced the complaints to writing by a letter dated February 27, 1985. Meanwhile Arnold continued to lag behind in its payments. Idacon brought the instant petition on an open account of $21,742.38 on February 21,1986.
Arnold answered and reconvened on March 21, 1986. It admitted the indebtedness but asserted that the failure to pay was due to numerous claims for repairs lodged by Arnold’s customers. It demanded damages for past replacement costs of $20,785.78, future replacement costs of $8,000,000, and lost business of $500,000. Idacon’s answer asserted that the alleged failures and repairs were due to Arnold’s improper application of Dura-Treet II and its use of heartwood, which does not respond well to any form of treatment.
In March 1988 Idacon filed the instant exception of prescription, urging that Arnold’s reconventional claim was one for a defective product and prescribed in one year. Arnold filed an opposition. It cited the warranties that Idacon extended to purchasers of wood treated with Idacon’s products, as well as various letters and advertisements vouching for the high quality of Dura-Treet II. All this, Arnold urged, placed the case in the context of a breach of contract or warranty and set the prescriptive period at ten years.
The court conducted a hearing on the exception in April 1988. Most of the testimony focused on Idacon’s alleged guarantee that Dura-Treet II would be tested and approved, and on Arnold’s claim that Ida-con withheld unfavorable test results. Ida-con’s president, Mr. Hatcher, testified that Arnold had never been timely on its account; so when Arnold began complaining about the quality of the product only after Idacon threatened to sue, he thought Arnold was just using another delay tactic. Mr. Hatcher insisted Arnold had never forwarded to Idacon any demands for the replacement of wood. He admitted that some tests found Dura-Treet II not performing “as effectively” as other products, but he felt those tests were not scientific so he did not release to Arnold the results. As for the effectiveness of the product, Mr. Hatcher said that of the seven to nine treaters who bought Dura-Treet II, only *1293 Arnold and one other lodged complaints; and both of these, upon inspection, appeared to have been the fault of the treat-ers, who misapplied the chemicals.
Mr. Arnold testified he never experienced any problems with the original product, P-9. When Idacon’s representatives came around, they assured him that Dura-Treet II was comparable to P-9 and that independent labs would prove it. He decided to buy the new product, but before he could use it Idacon personnel inspected his treatment procedure; they approved it not only initially but but on every subsequent periodic check. In fact, Hatcher brought prospective customers to Arnold’s plant to illustrate the process. Mr. Arnold testified he began receiving complaints in May 1984, and was sent photos of the rotted fence-posts in October 1984. Mr. Arnold concluded by saying that if someone from Idacon had ever come and looked at the rotted wood as requested, then Arnold would have paid the account.
As noted, the trial court found that Arnold’s claim was not merely for a product of different or lower quality but for a product unfit for the purpose intended. The action was thus regulated by the law of redhibition. Redhibitory actions prescribe one year after the sale if the seller is in good faith, and one year after discovery of the vice if the seller is in bad faith. LSA-C.C. arts. 2534, 2546. The court found that even if Idacon was in bad faith, Arnold knew “as early as May of 1984 and at the very latest early 1985” that the product was possibly defective. Thus the reconventional demand filed on March 21, 1986, had prescribed. The court further held that the claims of future losses by Arnold’s customers would be based on the warranty extended them by Idacon, and that if the customers sued Arnold, Arnold could call Idacon in warranty.

Arnold’s Appeal

Arnold’s chief contention is that the trial court erred in applying one year prescription instead of the ten year contractual prescription of LSA-C.C. art. 3499. Alternatively Arnold urges that even if one year prescription applied, it was suspended by fraud or bad faith on the part of the seller, or that a procedural extension made the action timely. We first address the question of the correct prescriptive period.
An action for breach of contract is personal in nature and, unless otherwise regulated by statute, prescribes in ten years. LSA-C.C. art. 3499; Ponder v. Gambrell, 490 So.2d 708 (La.App. 2d Cir.1986). A contract of sale is a special contract for which the law sets up specific rights and obligations. Stratton-Baldwin Co. v. Brown, 343 So.2d 292 (La.App. 1st Cir.1977); Ponder v. Gambrell, supra. An action in redhibition is the remedy when a defect in the thing sold renders it either absolutely useless or its use so inconvenient that it must be supposed that the buyer would not have purchased the thing had he known of the vice. LSA-C.C. art. 2520; Ark-La-Tex Builders & Realty Inc. v. Hoge, 344 So.2d 90 (La.App. 2d Cir.1977). The plaintiff in a redhibitory action seeks to avoid a sale (and, in this case, to collect for consequential damages) due to some vice or defect in the thing sold, based on an alleged breach of the warranty of fitness associated with all sales. Laughlin v. Fiat Distributors Inc., 368 So.2d 742 (La.App. 3d Cir.1979).
A redhibitory action prescribes one year from either the date of the sale if the seller was in good faith or the date that the defect was discovered if the seller was in bad faith, that is, the seller knew or was chargeable with knowledge of the defect, or from the date that the seller last attempted to repair the defect. LSA-C.C. arts. 2534, 2546; Peoples Water Serv. v. Menge Pump & Mach., 452 So.2d 752 (La.App. 5th Cir.1984), writ denied 456 So.2d 1391 (La.1984).
Unlike damages for other contractual breaches, damages for breach of warranty in a sales contract are founded in redhi-bition and subject to redhibitory prescription. Thus an exception from the standard ten year prescription obtains in redhibitory cases. See Austin v. North Amer. Forest, 656 F.2d 1076 (5th Cir.1981); Ponder v. Gambrell, supra. The presence of a *1294 breach of warranty, express or implied, does not convert a redhibitory action to a breach of contract and it does not alter the prescriptive period. Tripod Boats Inc. v. George Engine Co., 170 So.2d 238 (La.App. 4th Cir.1964); PPG Indus. v. Industrial Laminates Corp., 664 F.2d 1332 (5th Cir.1982).
This last point is crucial. Arnold’s petition in reconvention carefully avoids alleging “defect” and couches all allegations in terms of breach of warranty. The bulk of Arnold’s documents on file, as well as the thrust of Mr. Arnold’s trial testimony, likewise focus on the promises and warranties of fitness that allegedly caused him to buy Dura-Treet II. We have considered this evidence, especially Exhibits A through I. The only contract involved between Arnold and Idacon was one for the sale of Dura-Treet II, and this product either failed or was defective. The profusion of promises and guarantees will not change the true nature of the action. Tripod Boats Inc. v. George Engine Co., supra. This evidence is therefore not persuasive. We must look instead to the substance of the claim.
Arnold argues that the substance of its claim is breach of contract. A contract may be violated by failure to perform in the manner implied or by doing something inconsistent with the obligation. LSA-C.C. art. 1931. Arnold contends Idacon violated the contract by delivering a product of a lesser grade than contracted for, yet a product that was not defective. In support he cites a number of cases that applied contractual prescription to instances where the seller provided a product that was of lower quality than contracted for but was still not truly “defective.” For instance, in Victory Oil Co. v. Perret, 183 So.2d 360 (La.App. 4th Cir.1966), writ denied 249 La. 65, 184 So.2d 735 (1966), the seller of diesel fuel for the buyer’s trucks delivered fuel of a different grade and unsuitable for use in the trucks. In Harkins v. Howard Lumber Co., 460 So.2d 772 (La.App.3d Cir.1984), the seller who was supposed to provide “clear grade” redwood siding delivered siding with so many knotholes that it fell into a different, lower grade. In Peoples Water Serv. v. Menge Pump & Mach., supra, the seller provided a waterwell pump that met only “stock pump” qualifications instead of the specs detailed in the contract; after five years of use, the pump corroded.
From reading Arnold’s petition in reconvention, however, we are convinced, as was the trial court, that the real problem here was a potential defect. Arnold received exactly the product he contracted for, Dura-Treet II. Arnold learned in May 1984 that wood treated with Dura-Treet II was rotting; the photos attached as Ex. “14” show extensive rotting and warping in Dura-Treeted fenceposts that were only two years old. This is only a marginally better result than from untreated wood; see R. p.p. 383-386. We feel that if Dura-Treet II produced such disappointing results, it must be characterized as defective. Its use is apparently so inconvenient that the purchaser probably would not have bought it, had he known the consequences.
At oral argument Arnold’s counsel was unable to define what grade of product was contracted for and what lower grade was delivered. We have also attempted to enunciate what “lower grade” was delivered, but all descriptions revert to “defective product.” We cannot escape the conclusion that Arnold received precisely the product he contracted for, and not a lower grade of some other product he ordered. See Walton v. Katz & Besthoff, 77 So.2d 563 (La.App. Orl.Cir.1955); Crowley Grain Drier Inc. v. Fontenot, 132 So.2d 573 (La.App. 3d Cir.1961); Note, “Sales—Redhibi-tory Action—Action for Breach of Contract —Difference in Prescriptive Periods,” 15 La.L.Rev. 858, 864 (1955).
In brief Arnold has relied on the federal case of Delta Refrig. Co. v. Upjohn Co., 432 F.Supp. 124 (W.D.-La.l977), aff’d 575 F.2d 879 (5th Cir.1978), cert. denied 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978), as authority for applying ten year prescription to facts very similar to these. We acknowledge this holding but we decline to follow it, noting that the opinion is spare on Louisiana authority and appears to run contrary to the vast weight of jurisprudence, represented by Walton v. Katz *1295 & Besthoff, supra; Tripod Boats v. George Engine Co., supra; and PPG Indus. v. Industrial Laminates, supra. We also note that the result in Delta Refrig. Co. seems equitable, since the buyer proved no damages and none were awarded; he received only a remission of the balance of the purchase price. This outcome obtains from the operation of LSA-C.C.P. art. 424, whereby a defendant can urge a prescribed obligation in defense to an action. The same remedy is available to Arnold, as is noted in brief. As for Arnold’s reconven-tional demand, the trial court was not in error to apply one year prescription.
The evidence shows that in May 1984, Arnold began receiving complaints which increased through October; by August 1984 Arnold made the business decision to stop buying Dura-Treet II. On the basis of this evidence, the trial court concluded that Arnold had notice of the possible defect by “at the very latest early 1985,” and this conclusion is not plainly wrong. By this time Arnold had a reasonable basis to pursue a claim against Idacon. See Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987); Perkins v. O’Neal’s Feeders Supply, 463 So.2d 81 (La.App.3d Cir.1985); Ponder v. Gambrell, supra. We agree that Arnold’s reconventional demand of March 21, 1986 was not timely. The action is prescribed a fortiori if Idacon was a good faith seller. Idacon also made no repair efforts that would suspend prescription. This argument does not present reversible error.
Arnold also urges in brief that Ida-con’s conduct in failing to disclose certain test results until shortly before the hearing on the exception is a form of fraud which should suspend prescription. See LSA-C. C. arts. 1953,1954. Idacon correctly points out that Arnold did not plead fraud with particularity and cannot now advance it in argument. LSA-C.C.P. art. 856; Locker v. Wilson Well Serv., 536 So.2d 441 (La.App. 2d Cir.1988). Nevertheless in certain cases courts have overlooked the technical failure to allege fraud when the well pleaded facts support an annulment of the contract for fraud or error. See Kearney v. Maloney, 296 So.2d 865 (La.App. 4th Cir.1973), Musser v. Copping, 325 So.2d 681 (La.App. 4th Cir.1976), and Layne v. Schroeder, 399 So.2d 1262 (La.App. 4th Cir.1981), writ denied 405 So.2d 531 (La.1981) (three justices dissenting); see also Comment, “Seller’s Express Warranty Giving Rise To A Redhi-bitory Action—Art. 2529 of the Louisiana Civil Code,” 42 Tul.L.Rev. 374 (1968). An action to annul a contract prescribes in five years. LSA-C.C. art. 2032. We have examined Arnold’s pleading to see whether it could be construed to assert grounds of annulment. Arnold’s petition in reconvention does not allege, however, that when the contract was entered, Idacon knew its representations were false and advanced them to gain an unfair advantage over Arnold. It merely recites Idacon’s representations, and not every false representation falls into the category of fraud. Cotton States Chem. Co. v. Larrison Enter., 342 So.2d 1212 (La.App.2d Cir.1977); Walton v. Katz & Besthoff, supra. In fact, Arnold’s petition does not really assert with specificity that the product is defective. We therefore conclude that Arnold neither pleaded nor proved fraud. The re-conventional demand, as pleaded, falls in the realm of redhibition and has, for the reasons already discussed, prescribed.
Arnold finally argues that a procedural extension rendered the claim timely. LSA-C.C.P. art. 1067 provides:
Art. 1067. When prescribed incidental or third party demand is not barred
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of the date of service of main demand
Having received service of the main demand on February 26, 1986, Arnold now claims it had until May 13 (or May 25, by our reckoning) to bring its reconventional demand, and that its March 21, 1986 filing was timely.
By its own terms the article grants no extension unless the incidental claim “was not barred at the time the main demand was filed.” The trial court found that Ar *1296 nold had notice of the possible defect by “early 1985” and interpreted this to mean before February 21. Idacon’s main demand, filed February 21, 1986, came over one year after the latest time prescription could have begun to run. The extension simply does not apply. This argument does not present reversible error.
The trial court’s findings are not manifestly erroneous and the portion of the judgment dismissing Arnold’s claims for past damages is affirmed.

Idacon’s Appeal

The trial court held that although Arnold’s redhibitory action as to past damages had prescribed, future claims brought by Arnold’s customers would be regulated by Idacon’s warranty to those customers. These warranties are included as Exhibits A and B. The trial court stated:
As further claims are made in warranty, if they are made against [Arnold], then Idacon can be called in warranty ex contractu on said warranty claims. R.p. 395.
Idacon contends the trial court should not have categorized customers’ potential claims outside the context of the warranties, stressing that there is no warranty between itself and Arnold, only between itself and the ultimate purchasers of the wood.
The Civil Code, however, creates a right of action in favor of Arnold and against Idacon should Arnold be held liable to its customers in redhibition. LSA-C.C. art. 2531 provides in part:
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of the franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.
Under this article, Arnold’s “corresponding and similar” right of action against Idacon may survive even though its own action has prescribed. Cobb v. Coleman Oldsmobile, 393 So.2d 402 (La.App. 1st Cir.1981), writs denied 397 So.2d 1358, 1364 (La.1981). Idacon, as manufacturer, may assert various defenses. See, e.g., Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5th Cir.1985); Griffin v. Coleman Oldsmobile, 424 So.2d 1116 (La.App. 1st Cir.1982).
With the case in its present posture, the contested portion of the judgment is not appropriate. It is in the first place superfluous; the civil code reserves Arnold’s right of action against Idacon under the proper circumstances. More troubling is the judgment’s overbreadth. It fails to recognize Idacon’s potential defenses and, as written, might be construed to establish Idacon’s liability as a matter of res judica-ta. In this respect, the judgment is clearly erroneous for implying that Arnold has greater rights than the civil code provides.
Finally, the success of any future litigation will necessarily depend on many contingent factors. The individual lawsuits are certain to generate significant issues that are not yet before the court. The instant record does not even show that Arnold has been “held liable because of redhibitory defects in the thing sold,” and this is a plain prerequisite to recovery against the manufacturer. Thus the contested portion of this judgment is akin to an advisory opinion, addressing abstract and contingent rights. Such opinions are not favored in our law. Succ. of Harelson, 289 So.2d 187 (La.App. 1st Cir.1973). We also note that Arnold’s vendees would be necessary parties to future litigation. Even if Arnold had prayed for declaratory relief (he did not), the instant judgment rendered does not terminate the uncertainty between all the parties, including these vendees. Thus the judgment was inappropriate. LSA-C.C.P. art. 1880; Morial v. Guste, 365 So.2d 289 (La.App. 4th Cir.1978), writs denied 365 So.2d 1375 (La.1978).
*1297 For these reasons, the portion of the judgment holding Idacon liable ex contrae-tu must be deleted.

Decree

For the reasons expressed, the judgment is affirmed to the extent that it dismissed Arnold’s reconventional claim for past damages. It is amended to delete reference to future damages ex contractu. Costs of appeal are assessed to Arnold Construction Company.
AMENDED AND AFFIRMED.